UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ALISHA W.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:25-cv-00653<br><br>Magistrate Judge Daphne A. Oberg |

In the social security disability context, when an administrative law judge explains his rationale sufficiently to allow for meaningful review, and substantial evidence supports his findings, his decision must be affirmed. This is such a case. Alisha W.[1] seeks judicial review of the denial of her application for disability insurance benefits.[2] Ms. W. argues the ALJ erred by failing to provide a narrative discussion describing how the evidence supports the residual functional capacity assessment.[3] Where the ALJ's rationale is sufficiently linked to the evidence and is apparent from his decision as a whole, the Commissioner's decision is affirmed.[4]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (Compl., Doc. No. 1.)

[3] (*See* Opening Br. 10, Doc. No. 13.)

[4] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 10.)

## LEGAL STANDARDS

Under the Social Security Act, an individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[5] This court determines whether substantial evidence supports the ALJ's factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7] And an ALJ's factual findings are "conclusive if supported by substantial evidence."[8]

Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence may support an administrative agency's findings even if the record evidence is subject to inconsistent interpretations.[10] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[11]

---

[5] 42 U.S.C. § 423(d)(2)(A). The ALJ uses a five-step sequential evaluation to make this determination. *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988).

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Lax*, 489 F.3d at 1084 (citation omitted).

[11] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## PROCEDURAL HISTORY

In his evaluation of Ms. W.'s disability claim,[12] the ALJ found she had the severe impairments of "borderline personality disorder; bipolar disorder type II; major depressive disorder; generalized anxiety disorder; [and] posttraumatic stress disorder (PTSD)."[13] He concluded Ms. W. also had nonsevere physical impairments,[14] but found Ms. W.'s impairments overall did not meet or equal an impairment listing.[15]

The ALJ then determined Ms. W. had the residual functional capacity to work at all exertional levels, but with nonexertional limitations: "She can perform simple, goal-oriented but not assembly line-paced work; she can occasionally interact with coworkers, supervisors, and the general public; and she can adapt to routine changes in the workplace."[16] Because the ALJ found Ms. W. could perform work in the national economy, he denied her claim.[17]

---

[12] Ms. W. applied for disability insurance benefits under Title II of the Social Security Act. (*See* Certified Tr. of Admin. R. (Tr.) 20, 195–96, Doc. No. 11.)

[13] (Tr. 22.) An ALJ must assess whether the claimant has a severe medically determinable physical or mental impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

[14] (Tr. 23.) An ALJ must also decide whether any impairment or combination of impairments is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation). *See* 20 C.F.R. § 404.1520(a)(4)(iii).

[15] (Tr. 23.)

[16] (Tr. 25.)

[17] (Tr. 30–31.) This decision became final when the Appeals Council denied Ms. W.'s request for review. (Tr. 3–6.)

## ANALYSIS

Ms. W. argues the ALJ erred by failing to explain how the record evidence supports the residual functional capacity (RFC) assessment.[18] But the ALJ adequately linked the evidence to the assessed RFC and substantial evidence supports his findings.

A claimant's RFC reflects the most she can do in a work setting considering her limitations.[19] Considering all evidence in the record,[20] the ALJ assesses "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[21] In the RFC evaluation, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[22]

In this case, the ALJ found Ms. W.'s "multiple mental impairments, including borderline personality disorder, bipolar disorder, PTSD, depression, and anxiety, limit[ed] her to simple work with no more than occasional interactions and only routine

---

[18] (*See* Opening Br. 10, Doc. No. 13.)

[19] *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[20] *See* 20 C.F.R. § 404.1545(a)(3).

[21] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[22] *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 SSR LEXIS 5, at *19).

changes in the workplace as well as not performing assembly line-paced work."[23] Summarizing Ms. W.'s self-reported symptoms and limitations, the ALJ found her symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[24]

The ALJ then described the medical evidence in detail, including a psychological evaluation from four years before the alleged onset date and treatment records from the relevant period.[25] The ALJ noted: "During the relevant period, treatment records show fluctuating symptoms with good response to various treatment modalities, but inconsistent medication compliance and resistance to treatment at times, as well as difficulties with insurance."[26] Ms. W. was treated with transcranial magnetic stimulation (TMS), stellate ganglion block (SGB) injections, and medications like ketamine, quetiapine, and Xanax.[27] Once, she was hospitalized for a suicide attempt, and the hospital records indicated she had not been taking her medicine and she was experiencing regular suicidal ideation.[28] But at various times before and after this event, Ms. W. reported her medications worked well and her mental health issues were stable.[29]

---

[23] (Tr. 26.)

[24] (*Id.*)

[25] (Tr. 26–29.)

[26] (Tr. 27.)

[27] (Tr. 27–29.)

[28] (Tr. 28.)

[29] (*See* Tr. 27–29.)

The ALJ also considered prior findings of state agency psychological consultants, who found Ms. W. had no severe mental impairments.[30] Deeming these findings unpersuasive, the ALJ explained Ms. W.'s "multiple treatment modalities for numerous diagnosed mental impairments, as well as inpatient hospitalization," established she had severe mental impairments.[31] He concluded: "Based on the foregoing, the undersigned finds that the claimant had the above residual functional capacity assessment, which was supported by and consistent with the objective medical evidence, documented reports, medical history, the claimant's testimony, and the record as a whole."[32]

According to Ms. W., the ALJ merely summarized the medical evidence, then stated his conclusion without "offer[ing] the requisite explanation to link his RFC assessment to specific evidence."[33] In support of her position, Ms. W. relies on *Gulbransen v. Astrue*,[34] a case where the court found it "insufficient for the ALJ to only generally discuss the evidence but fail to relate that evidence to his conclusions."[35] Ms. W. also relies on the *Heslop v. Astrue*[36]—where the court observed that the ALJ failed

---

[30] (Tr. 29.)

[31] (*Id.*)

[32] (Tr. 30.)

[33] (Opening Br. 11, Doc. No. 13.)

[34] No. 2:12-cv-107, 2012 U.S. Dist. LEXIS 145445 (D. Utah Oct. 4, 2012) (unpublished).

[35] *Id.* at *19–20.

[36] No. 06-1343, 2007 U.S. Dist. LEXIS 89668 (D. Kan. Aug. 22, 2007) (unpublished).

to indicate "how the evidence support[ed] the RFC findings, and it [was] not clear from the decision how the medical evidence discussed by the ALJ support[ed] the ALJ's RFC findings."[37]

In response, the Commissioner argues the ALJ's RFC analysis was adequate under *Wall v. Astrue*.[38] In *Wall*, the Tenth Circuit endorsed reading an ALJ's decision "as a whole" to avoid "unwarranted remands needlessly prolonging administrative proceedings."[39] As relevant here, the court looked to other portions of the decision to find support for the ALJ's mental RFC assessment—specifically, the ALJ's analysis of the claimant's mental limitations under the "paragraph B" criteria.[40] (ALJs use the "paragraph B" criteria to decide whether a claimant has a severe medically determinable mental impairment, and whether any impairments are equivalent to an impairment precluding substantial gainful activity.)[41] The *Wall* court also pointed to the ALJ's detailed discussion of the medical evidence and noted that the record contained no medical opinions supporting a disability finding.[42] As the court explained, where the

---

[37] *Id.* at *9.

[38] 561 F.3d 1048 (10th Cir. 2009).

[39] *Id.* at 1069.

[40] *Id.* Specifically, the court addressed the claimant's pain disorder—a "somatoform disorder in which psychological factors play an important role in the onset, severity, exacerbation, or maintenance of the pain." *Id.* at 1059 & n.18.

[41] *See* 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00E.

[42] *Wall*, 561 F.3d at 1068.

"ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's [RFC], the need for express analysis is weakened."[43]

Here, as in *Wall*, the ALJ's decision sufficiently explains the basis for the RFC assessment. As in *Wall*, the ALJ gave a detailed summary of the medical evidence in the portion of the decision addressing RFC. The ALJ also included some analysis of this evidence, noting, for example, Ms. W.'s "fluctuating symptoms with good response to various treatment modalities, but inconsistent medication compliance and resistance to treatment at times, as well as difficulties with insurance."[44] And although the ALJ did not expressly describe how the medical evidence supported each assessed RFC limitation in this portion of the decision, his decision is not a "bare conclusion" falling "beyond meaningful judicial review."[45] His rationale is apparent from his findings regarding the "paragraph B" criteria.

In the evaluation process, an ALJ must rate the degree of limitation resulting from medically determinable mental impairments in four broad functional areas, known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[46] Here, the ALJ found Ms. W. mildly limited in the

---

[43] *Id.* at 1069 (citation omitted).

[44] (Tr. 27.)

[45] *Wall*, 561 F.3d at 1069 (quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005)).

[46] *See* 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00E.

first area and moderately limited in the other three areas.[47] Citing mental status examinations, the ALJ noted the treatment record did not show problems with memory or cognition (the first area).[48] In the second area (interacting with others), the ALJ acknowledged a psychological evaluation and various treatment records documenting difficulties, but he noted "other interactions with medical personnel and others were appropriate and [Ms. W.'s] symptoms improved with treatment."[49] He also observed that Ms. W. attended church weekly, volunteered with a church group, and attended family dinners.[50] In the third area (concentrating, persisting, or maintaining pace), the ALJ discussed Ms. W.'s reports of panic attacks and difficulty concentrating, following directions, and paying attention.[51] He acknowledged her mental impairments "would be likely to interfere with her ability to maintain attention and concentration."[52] But he noted in "mental status examinations throughout the record," Ms. W.'s "attention or concentration were intact, she was able to track and respond to conversation, and she attended to detail appropriately."[53] And in the fourth area (adapting or managing herself), the ALJ emphasized Ms. W.'s testimony that she could perform household

---

[47] (Tr. 23–24.)

[48] (Tr. 23.)

[49] (Tr. 24.)

[50] (*Id.*)

[51] (*Id.*)

[52] (*Id.*)

[53] (*Id.*)

chores and take care of her personal needs with some reminders.[54] He also pointed to hospital discharge records indicating she could "perform all of her activities of daily living and self-care on her own without assistance."[55]

Read together, the ALJ's analysis of the paragraph B criteria and his detailed discussion of the medical evidence in the RFC section adequately explain and support the RFC findings. The ALJ's paragraph B analysis explains his reasons for finding Ms. W. less limited than she alleged in each broad area of mental functioning. And it reveals the ALJ's rationale for the specific limitations included in the RFC assessment: "simple work with no more than occasional interactions and only routine changes in the workplace as well as not performing assembly line-paced work."[56] The ALJ's stated reasons for finding Ms. W. had moderate limitations in interacting with others; concentrating, persisting and maintaining pace; and adapting and managing herself support these RFC limitations. Further, as in *Wall*, the record contains no medical opinion evidence supporting greater limitations. In the absence of such evidence, the ALJ's analysis of the paragraph B criteria and detailed discussion of the evidence sufficiently supports his RFC assessment.

The evidence the ALJ cited in both the paragraph B analysis and RFC assessment—including mental status examinations, medical records reporting a good response to treatment, and daily activities—is more than a "mere scintilla."[57] It

---

[54] (*Id.*)

[55] (*Id.*)

[56] (Tr. 26.)

[57] *Biestek*, 587 U.S. at 103.

substantially supports the assessed limitations. In her brief, Ms. W. points to evidence she contends supported greater limitations: mental status examinations noting she had an anxious, sad, and depressed mood; treatment records indicating she appeared depressed and frustrated; hospitalization records showing was agitated, combative, and had to be sedated; and therapy records describing her as withdrawn and aggressive.[58] Ms. W. also notes she received TMS treatment more than six times per month during an eight-month period, on average, in addition to ketamine infusions and therapy.[59] But the ALJ considered all this evidence. He specifically discussed the hospitalization records, mental status examinations reporting anxious and depressed moods, and Ms. W.'s various treatments.[60] And he acknowledged her "fluctuating symptoms" throughout the relevant period.[61] Where the ALJ considered all the evidence and substantial evidence supports his findings, Ms. W.'s argument is merely an invitation to reweigh the evidence—which the court cannot do.[62]

The cases Ms. W. relies on do not compel a contrary result. In *Gulbransen*, the court noted the ALJ did "little to actually link the [RFC] assessment with the evidence in the record."[63] But the court did not reverse on this basis. Instead, it concluded: "reversal is necessary for a more important reason: the ALJ's [RFC] assessment is not

---

[58] (Opening Br. 13, Doc. No. 13.)

[59] (*Id.* at 13–14.)

[60] (Tr. 27–29.)

[61] (Tr. 27.)

[62] *See Langley*, 373 F.3d at 1118.

[63] 2012 U.S. Dist. LEXIS 145445, at *20.

supported by substantial evidence."[64] The court explained the ALJ rejected "the great majority of the evidence in the record" and relied exclusively on one source's opinion, which did not qualify as substantial evidence.[65] Here, by contrast, the ALJ did not rely on a single source to the exclusion of other evidence. Further, unlike in *Gulbransen*, the ALJ's rationale is apparent from the decision as a whole, and substantial evidence supports the assessed RFC.

*Heslop* is similarly distinguishable. In that case, the court observed it was "not clear from the decision how the medical evidence discussed by the ALJ support[ed] the ALJ's RFC findings."[66] The court found this particularly problematic where medical opinion evidence conflicted with the ALJ's RFC findings and supported greater limitations.[67] But here, the evidence contained no conflicting medical opinions supporting greater limitations, and the ALJ's rationale is apparent from the decision as a whole. Neither *Gulbransen* nor *Heslop* support Ms. W.'s contention that reversal is required.

In sum, the ALJ's decision adequately linked the evidence to the assessed RFC, and substantial evidence supports the ALJ's findings. His rationale can be meaningfully reviewed. Accordingly, the Commissioner's decision is affirmed.

---

[64] *Id.*

[65] *Id.* at *20–21.

[66] *Heslop*, 2007 U.S. Dist. LEXIS 89668, at *9.

[67] *Id.* at *12.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 28th day of September, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge